UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FREDERICK B. COLLINS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BEENVERIFIED, LLC and THE LIFETIME VALUE CO. LLC,<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Frederick B. Collins ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint for violations of Colo. Rev. Stat. § 6-1-304 (Colorado's "Prevention of Telemarketing Fraud Act" or "PTFA") against Defendants BeenVerified, LLC and The Lifetime Value Co. LLC ("BeenVerified" or "Defendants"). Plaintiff makes the following allegations pursuant to his counsel's investigation and based upon information and belief, except as to allegations specifically pertaining to himself, which are based on personal knowledge.

## NATURE OF ACTION

1. On May 27, 2005, former Colorado Governor Bill Owens signed into law HB05-1288,[1] which amended the PTFA to prohibit commercially listing a cell phone number in a directory, without permission.[2] *See* Colo. Rev. Stat. § 6-1-304(4)(a)(I).

---

[1] https://www.leg.state.co.us/clics2005a/csl.nsf/fsbillcont2/1BB0D3E00348AC6987256F90007C20C7?Open. *See also* https://leg.colorado.gov/sites/default/files/images/olls/2005a_sl_180.pdf.

[2] https://www.leg.state.co.us/CLICS2005A/commsumm.nsf/IndSumm/574E34C489356ADA87256FB100612E60?OpenDocument. *See also* https://www.leg.state.co.us/CLICS2005A/commsumm.nsf/91320994cb8e0b6e8725681d005cb995/574e34c489356ada87256fb100612e60?OpenDocument.

2. This prohibition is designed to protect privacy. As former State Representative Mark Cloer,[3] a prime sponsor of HB05-1288,[4] stated in describing this new portion of the PTFA: "[m]ost people view their cell phones as private. They give out the number to friends and family and some colleagues. When their cell phone rings, they expect it to be important."[5]

3. Indeed, concern over cell phone privacy is widespread. According to a research paper presented in May 2005 at the American Association for Public Opinion Research (AAPOR)'s Annual Conference[6] and January 2006 at the American Statistical Association (ASA)'s Second International Conference on Telephone Survey Methodology:[7]

> [T]here appears to be a strong reluctance on the part of cell phone owners to have their cell phone numbers listed in a directory. …
>
> This reluctance on the part of respondents to have their cell phone number listed in a directory may be rooted in not wishing to incur additional costs due to unsolicited incoming calls. …
>
> A more likely reason for their unwillingness to have their cell phone number listed is that respondents view the cell phone as more of a private medium of communication than their land-line phone. They probably wish to restrict access to their cell phone number to family and friends.[8]

4. The Colorado General Assembly enacted subsection (4) of the PTFA to address these privacy concerns and to protect cell phone users from the misappropriation of their personal information. This aligns with the PTFA's overall purpose, as articulated by Colo. Rev.

---

[3] *See* https://www.leg.state.co.us/clics2005a/directory.nsf.

[4] https://lawcollections.colorado.edu/colorado-session-laws/islandora/object/session%3A36205 at p. 2461. *See also* https://www.leg.state.co.us/CLICS2005A/csl.nsf/StatusAll?OpenFrameSet.

[5] https://www.9news.com/article/news/local/politics/legislative-library-feb-23-2005/73-344789916.

[6] https://aapor.org/wp-content/uploads/2024/05/AAPORPrograms2005.pdf at pp. 13, 84.

[7] https://scholar.google.com/citations?view_op=view_citation&hl=en&user=I2jkzr0AAAAJ&citation_for_view=I2jkzr0AAAAJ:M3ejUd6NZC8C; https://ww2.amstat.org/meetings/tsmii/2006/index.cfm?fuseaction=main.
[8] http://www.asasrms.org/Proceedings/y2005/files/JSM2005-000345.pdf at p. 4005.

2

Stat. § 6-1-301:

> The general assembly hereby finds, determines, and declares that the use of telephones for commercial solicitation is rapidly increasing; that this form of communication offers unique benefits, but entails special risks and poses the potential for abuse; that the general assembly finds that the widespread practice of fraudulent and deceptive commercial telephone solicitation has caused substantial financial losses to thousands of consumers, and, particularly, elderly, homebound, and otherwise vulnerable consumers, and is a matter vitally affecting the public interest; and, therefore, that the general welfare of the public and the protection of the integrity of the telemarketing industry requires statutory regulation of the commercial use of telephones.

5. Colo. Rev. Stat. § 6-1-304(4) provides, in pertinent part:

   (a) On or after September 1, 2005, a person commits an unlawful telemarketing practice if the person knowingly:

   (I) Lists a cellular telephone number in a directory for a commercial purpose unless the person whose number has been listed has given affirmative consent, through written, oral, or electronic means, to such listing[.]

6. Despite this abundantly clear proscription, Defendants have listed the cellular telephone numbers of thousands of Colorado residents in their for-sale and for-profit directory, without requesting (let alone actually receiving) affirmative consent to such listings.

7. Thus, while Defendants profit handsomely from their unauthorized commercial listing of Plaintiff's and other Class Members' personal information, they do so at the expense of Coloradans' statutory privacy rights, under the PTFA.

8. Not only is Defendants' misappropriation unlawful – it is also dangerous. The Federal Trade Commission's ("FTC") report on "Data Brokers" states:

> There are a number of potential risks to consumers from data brokers' collection and use of consumer data. … [T]hey may facilitate the sending of advertisements … which some consumers may find troubling and which could undermine their trust in the marketplace. Moreover, … people search products can be used to facilitate harassment, or even stalking, and may expose domestic violence victims, law enforcement

3

officers, prosecutors, public officials, or other individuals to retaliation or other harm. [In addition, s]toring [d]ata [a]bout [c]onsumers [i]ndefinitely [m]ay [c]reate [s]ecurity [r]isks[.][9]

9. Plaintiff brings this action to prevent Defendants from further violating the privacy rights of Colorado cell phone users and to recover statutory damages from Defendants, pursuant to Colo. Rev. Stat. § 6-1-305(1)(c).

## PARTIES

10. Plaintiff Frederick B. Collins is, and has been at all relevant times, a resident and citizen of Boulder, Colorado. Plaintiff's cellular telephone number was listed by Defendants in their directory, available at beenverified.com, to advertise and/or actually sell products and services. Defendants never requested – and Plaintiff never provided – affirmative consent, through written, oral, or electronic means, to such listing. In fact, Plaintiff has no relationship with Defendants whatsoever. Plaintiff had no reasonable ability to discover Defendants' use of his personal information until shortly before filing suit.

11. Defendant BeenVerified, LLC is a Delaware limited liability company with its principal place of business at 48 West 38th Street, Floor 8, New York, NY 10018. Defendant operates the directory beenverified.com. Therein, and for commercial purposes, Defendant has listed the cellular telephone numbers of thousands of individuals whom it knows to reside in Colorado.

12. Defendant The Lifetime Value Co. LLC is a Delaware limited liability company with its principal place of business at 48 West 38th Street, Floor 8, New York, NY 10018. Defendant operates the directory beenverified.com. Therein, and for commercial purposes,

---

[9] https://www.ftc.gov/system/files/documents/reports/data-brokers-call-transparency-accountability-report-federal-trade-commission-may-2014/140527databrokerreport.pdf at p. 48.

4

Defendant has listed the cellular telephone numbers of thousands of individuals whom it knows to reside in Colorado. On information and belief, Defendant BeenVerified, LLC is a subsidiary of Defendant The Lifetime Value Co. LLC.

13. On information and belief, Defendants have operated as a common enterprise while engaging in the unlawful acts and practices alleged herein. Defendants are an interrelated network of companies that have common ownership, officers, managers, financial arrangements, business functions, employees, and office locations. Because Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged.

## JURISDICTION AND VENUE

14. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as amended by the Class Action Fairness Act of 2005 ("CAFA"), because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and there are over 100 members of the putative class, and Plaintiff, as well as most members of the proposed class, are citizens of different states than Defendants.

15. The Court has personal jurisdiction over Defendants because Defendants are domiciled in the State of New York.

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants reside in this District.

## LEGAL AND FACTUAL BACKGROUND

**I.    Overview of Defendants' Directory**

17. Defendants are data brokers – companies "that collect consumers' personal

information and resell or share that information with others[.]"[10]

18. Specifically, Defendants provide online "people search" (also known as "people finder") services. People search companies, like Defendants, specialize in compiling vast amounts of information about individuals from various sources.[11]

19. Defendants and their competitors monetize said personal details through their directories – some of which give users free access to the data, and others of which furnish reports about people for a fee.

20. Defendant's directory is available at beenverified.com. There, anyone on the Internet can view Coloradans' "age, current and past addresses, phone numbers, email addresses and possible photos, when available."[12]

21. This is achieved by simply searching an individual by name, city, state, phone number, address, and/or other parameters:[13]

**The Everyday Information Company**
People, Vehicle, Property and Contact Info.

START HERE: People Search | Phone Lookup | Email Lookup | Address Lookup | Vehicle Search

FIRST NAME | LAST NAME | SEARCH

🔒 PRIVACY SECURED

22. Users of beenverified.com can also find people in the "people directory" where

---

[10] https://www.ftc.gov/system/files/documents/reports/data-brokers-call-transparency-accountability-report-federal-trade-commission-may-2014/140527databrokerreport.pdf at p. i.

[11] https://consumer.ftc.gov/articles/what-know-about-people-search-sites-sell-your-information.

[12] https://www.beenverified.com.

[13] *Id.*

they "may be able to find out information like cell phone numbers…"[14]



23. Within the people directory, users can find people listed by last name and city (i.e., those with the surname of "Badger" in Denver):[15]



24. After entering this information, a beenverified.com user is furnished with a list of search results. Each result corresponds to an actual person that Defendants have located who

---

[14] https://www.beenverified.com/people/.

[15] https://www.beenverified.com/people/b/.

matches the searched parameters.[16]



25.     Beenverified.com's free, limited previews include searched individuals' cell phone number(s) and a plethora of other identifying information.

26.     Defendants also make available paid, full background reports that do not redact or blur searched individuals' sensitive personal information whatsoever – including cell phone

---

[16] Note, in this image of beenverified.com's search results, Plaintiff's counsel has redacted certain sensitive personal information (black portions).

numbers. Instead, they offer a comprehensive view into said individuals' private details.[17]



27.     As the above images of beenverified.com make clear, Defendants knowingly list Coloradans' cell phone numbers. On beenverified.com, Defendants state: "Our public records names directory may include previous & current home addresses, cell phones and more." Defendants encourage users to "Search possible phone numbers for [a particular person]." And Defendants do, in fact, provide phone numbers for that person, including numbers labeled as

---

[17] Note, in this image of beenverified.com's paid, full background report, Plaintiff's counsel has redacted certain sensitive personal information.

9

"Mobile" and "Possible Cell Phone."

28. Listing individuals' personal information – including cell phone numbers – on beenverified.com helps Defendants entice users to acquire access to Defendants' paid, full background reports.

29. To acquire a full background report from Defendants, a beenverified.com user can pay a monthly subscription fee ranging from $19.49 per month to $29.99 per month:[18]



30. Users can also access a 7-day trial membership for $1:[19]

---

[18] https://www.beenverified.com/pricing/.
[19] https://www.beenverified.com/offers.



31.     Thus, the listing of Plaintiff's and Class Members' cell phone numbers is for a commercial purpose.  Indeed, that is Defendants' entire business model.  Defendants are literally selling Plaintiff's and Class Members' cell phone numbers and accompanying information to their customers and subscribers.

**II.     Defendants' Conduct Harms Coloradans**

32.     Consumer data is key to the $26 billion-per-year online advertising industry in the United States.[20]  Clearly, and per the FTC, consumer data possesses inherent monetary value:

> Most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency. The larger the data set, the greater potential for analysis – and profit.[21]

33.     In fact, individuals' private information has become such a valuable commodity

---

[20] http://online.wsj.com/article/SB10001424052748703529004576160764037920274.html.

[21] https://www.ftc.gov/sites/default/files/documents/public_statements/remarks-ftc-exploring-privacy-roundtable/091207privacyroundtable.pdf at p. 2.

11

that companies now offer individuals the opportunity to monetize their personal data.[22]

34. These companies' business models capitalize on a fundamental principle underlying the modern information marketplace: Consumers recognize the economic value of their private data. Along these lines, research shows that consumers are willing to pay a premium to purchase services from companies that adhere to more stringent policies of protecting their data.[23] A 2014 survey conducted by Harris Interactive on behalf of TRUSTe, Inc. showed that 89 percent of consumers avoid doing business with companies who they believe do not protect their privacy.[24] The same is true for 80 percent of smartphone users, who say that they avoid using smartphone apps that they don't believe protect their privacy.[25]

35. Defendants' misappropriation of Coloradans' cell phone numbers undeniably deprives state residents of the ability to enjoy their PTFA privacy rights. It also deprives them of the real, quantifiable value of such data.

36. Further, "[p]eople search sites … offer a wealth of information that can be exploited by malicious actors."[26] For one, "[b]undling [personal data] all together and making it so easily

---

[22] *See, e.g.*, https://www.washingtonpost.com/technology/2023/02/06/consumers-paid-money-data/; http://www.nytimes.com/2012/02/13/technology/start-ups-aim-to-help-users-put-a-price-on-their-personal-data.html; https://techcrunch.com/2023/08/16/caden-lands-15m-to-let-users-monetize-their-personal-data/; https://www.theverge.com/2019/6/11/18661595/facebook-study-app-monitor-phone-usage-pay; https://sifted.eu/articles/gener8; https://www.theverge.com/2012/2/8/2785751/google-screenwise-panel-web-monitoring-knowledge-networks; https://www.sidehustlenation.com/get-paid-for-your-data/; https://millennialmoneyman.com/get-paid-for-your-data/.

[23] *See, e.g.*, https://web.archive.org/web/20240420201259/https://www.enisa.europa.eu/publications/monetising-privacy/@@download/fullReport; https://citeseerx.ist.psu.edu/document?repid=rep1&type=pdf&doi=8b70320d110370c82ca9cbab768db58b74878234.

[24] *See* https://web.archive.org/web/20190820142832/http://www.theagitator.net/wp-content/uploads/012714_ConsumerConfidenceReport_US1.pdf at p. 3.

[25] *Id.*

[26] https://www.foxnews.com/tech/dangerous-intersection-people-search-sites-scams.

accessible can … put ordinary people at risk of … stalking and other forms of harassment."[27] Second, people search sites' "comprehensive data allows cybercriminals to build detailed profiles of potential victims, making it easier to craft convincing scams or carry out identity theft."[28] This "put[s] almost anyone within the reach of fraudulent telemarketers[]" and other wrongdoers.[29]

37. Information disclosures like Defendants' are particularly dangerous to the elderly. "Older Americans are perfect telemarketing customers, analysts say, because they are often at home, rely on delivery services, and are lonely for the companionship that telephone callers provide."[30] The FTC notes that "[t]he elderly often are the deliberate targets of fraudulent telemarketers who take advantage of the fact that many older people have cash reserves or other assets to spend on seemingly attractive offers."[31]

38. Making matters worse, "[o]nce marked as receptive to [a specific] type of spam, a consumer often is bombarded with similar fraudulent offers from a host of scam artists."[32]

## CLASS ALLEGATIONS

39. Pursuant to Fed. R. Civ. P. 23, Plaintiff seeks to represent a class defined as all Colorado residents whose cell phone numbers were listed on beenverified.com (the "Class").

40. Plaintiff reserves the right to modify the Class definition, including by using subclasses, as appropriate based on further investigation and discovery obtained in the case.

---

[27] https://innovation.consumerreports.org/Data-Defense_-Evaluating-People-Search-Site-Removal-Services-.pdf.

[28] https://www.foxnews.com/tech/dangerous-intersection-people-search-sites-scams.

[29] http://www.nytimes.com/2007/05/20/business/20tele.html.

[30] *Id.*

[31] https://www.ftc.gov/sites/default/files/documents/public_statements/prepared-statement-federal-trade-commission-fraud-against-seniors/agingtestimony.pdf at p. 1.

[32] *Id.* at p. 3.

41. **Numerosity:** The Class is composed of at least thousands of individuals, the joinder of which in one action would be impracticable. The disposition of their claims through this class action will benefit both the parties and the Court.

42. **Existence and Predominance of Common Questions of Fact and Law:** There is a well-defined community of interest in the questions of law and fact involved affecting the members of the proposed Class. The questions of law and fact common to the proposed Class predominate over questions affecting only individual Class Members. Such questions include, but are not limited to, the following: whether Defendants violated Colo. Rev. Stat. § 6-1-304(4)(a)(I); and whether Plaintiff and Class Members are entitled to damages, reasonable attorneys' fees, pre-judgment interest and costs of this suit, pursuant to Colo. Rev. Stat. § 6-1-305(1)(c).

43. **Typicality:** The claims of the named Plaintiff are typical of the claims of the Class because Plaintiff, like all other Class Members, had his cell phone number listed on beenverified.com for a commercial purpose; Defendants did so without requesting or receiving Plaintiff's affirmative consent (through written, oral, or electronic means); and Defendants' misappropriation of Plaintiff's personal data (including the economic value thereof) came at the expense of Plaintiff's PTFA privacy rights.

44. **Adequacy:** Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

45. **Superiority:** The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class. Each individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.  Finally, Defendants have acted or refused to act on grounds generally applicable to the entire Class, thereby making it appropriate for this Court to grant final injunctive relief and declaratory relief with respect to the Class as a whole.

## CAUSES OF ACTION

### COUNT I
### Violation of the Prevention of Telemarketing Fraud Act,
### Colo. Rev. Stat. § 6-1-304(4)(a)(I)

46. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

47. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendants.

48. Colo. Rev. Stat. § 6-1-304(4) provides:

    (a) On or after September 1, 2005, a person commits an unlawful telemarketing practice if the person knowingly:

        (I) Lists a cellular telephone number in a directory for a

15

>commercial purpose unless the person whose number has been listed has given affirmative consent, through written, oral, or electronic means, to such listing[.]

49. Defendants failed to comply with this PTFA mandate.

50. Defendants knowingly list Coloradans' cell phone numbers. On beenverified.com, Defendants state: "Our public records names directory may include previous & current home addresses, cell phones, and more." Defendants encourage users to "Search possible phone numbers for [a particular person]." And Defendants do, in fact, provide phone numbers for that person, including numbers labeled as "Mobile" and "Possible Cell Phone."

51. Defendant's website, beenverified.com, is a directory – i.e., an "electronic resource containing lists of information, usually in alphabetical order, for example people's phone numbers or the names and addresses of businesses in a particular area[.]" *Directory*, Oxford Learner's Dictionary, https://oxfordlearnersdictionaries.com/us/definition/english/directory.[33] Defendants admit as much, referring to part of the site as a "people directory";[34] advertising that their "public records names directory may include previous & current home addresses, cell phones and more";[35] and titling pages with the word "directory."[36]

52. Defendants engage in this conduct for a commercial purpose. The purpose behind

---

[33] *See also Directory*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/directory ("an alphabetical or classified list (as of names and addresses)[.]"); *Directory*, Cambridge Essential American English Dictionary, https://dictionary.cambridge.org/us/dictionary/essential-american-english/directory ("a book or list of names and numbers"); *Directory*, AllWords.com Multi-Lingual Dictionary, https://www.allwords.com/word-directory.html ("A list of names, address etc., of specific classes of people or organizations, often in alphabetical order or in some classification.").

[34] https://www.beenverified.com/people/.

[35] *Id.*

[36] *See, e.g.*, https://www.beenverified.com/people/names-directory/; https://www.beenverified.com/phone-records/.

listing individuals' personal information – including cell phone numbers – on beenverified.com is to entice users to acquire access to Defendants' paid, full background reports.

53. Defendants never request nor receive Coloradans' "affirmative consent, through written, oral, or electronic means, to such listing[.]" Colo. Rev. Stat. § 6-1-304(4)(a)(I).  Rather, Defendants list the cell phone numbers of Coloradans they have never engaged with, have had no connection to, and who are unaware of their existence.

54. Defendants' misappropriation of Class Members' personal data (including the economic value thereof) came at the expense of Class Members' PTFA privacy rights.  It deprived Class Members of the real, quantifiable value of such data.  And it exposed Class Members to elevated risks of stalking, harassment, scams, identity theft, and unwanted telemarketing.

55. Thus, on behalf of himself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class; (3) damages, pursuant to Colo. Rev. Stat. § 6-1-305(1)(c), of at least three hundred dollars and not more than five hundred dollars for each first offense, and at least five hundred dollars and not more than one thousand dollars for each second or subsequent offense; and (4) reasonable attorneys' fees and other litigation costs pursuant to Colo. Rev. Stat. § 6-1-305(1)(c).

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff on behalf of himself and the proposed Class, respectfully requests that this Court enter an Order:

(a) Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as the representative of the Class, and appointing Plaintiff's counsel as Class Counsel;

(b) Declaring that Defendants' actions, as set out above, violate Colo. Rev. Stat. § 6-1-304(4)(a)(I) (Colorado's "Prevention of

    Telemarketing Fraud Act" or "PTFA");

(c)  Awarding damages, pursuant to Colo. Rev. Stat. § 6-1-305(1)(c), of at least three hundred dollars and not more than five hundred dollars for each first offense, and at least five hundred dollars and not more than one thousand dollars for each second or subsequent offense;

(d)  Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including, *inter alia*, an Order requiring Defendants to comply with the PTFA;

(e)  Awarding Plaintiff and the Class their reasonable attorneys' fees and other litigation costs pursuant to Colo. Rev. Stat. § 6-1-305(1)(c);

(f)  Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

(g)  Awarding such other and further relief as equity and justice may require.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury for all issues so triable.

Dated:  March 28, 2025        Respectfully submitted,

             */s/ Joseph I. Marchese*
             Joseph I. Marchese

             **BURSOR & FISHER, P.A.**
             Joseph I. Marchese
             Matthew A. Girardi
             1330 Avenue of the Americas, 32nd Floor
             New York, NY 10019
             Telephone: (646) 837-7150
             Facsimile: (212) 989-9163
             E-mail: jmarchese@bursor.com
                 mgirardi@bursor.com

             *Counsel for Plaintiff and the Putative Class*